Argued December 14, 1917, reversed January 22, rehearing allowed April 9, argued on rehearing April 26, decree reversing Circuit Court adhered to June 4, 1918.

## MARSHALL *v.* GUSTIN.

(170 Pac. 312; 173 Pac. 461.)

**Appeal and Error—Matters Reviewable—Demurrer—Grounds.**

1. A demurrer on grounds other than the running of limitations does not raise such question on appeal.

**Cancellation of Instruments—Demurrer—Equitable Jurisdiction.**

2. Where it appears inferentially that defendant was holding land as a guardian when she fraudulently prevailed upon plaintiffs to sell to her at an inadequate price, a complaint was not demurrable as not calling for equitable jurisdiction, although the court might not be able to grant the specific relief prayed for.

**Guardian and Ward—Recovery of Property—Equity or Law—Inconsistent Remedies.**

3. Where defendant was appointed guardian of plaintiffs and of personal property in Oregon, but not in Washington as to land there, and she purchased such land from them fraudulently at an inadequate price, equity had no jurisdiction of an action for the difference between the price received and the value of the land, it being necessary in such case that plaintiffs either affirm the transaction and sue

for damages or repudiate the bargain and call upon equity to place them *in statu quo,* but both remedies cannot be had in one action.

[Powers of guardian in chancery and at common law, see note in 18 Am. Dec. 689.]

### ON REHEARING.

**Infants—Sale of Land—Fraud of Purchaser—Remedy.**

4.   Remedy of infants induced by fraud to sell their land for less than its value, they, on arriving at majority, choosing to affirm the sale, and not asking to have it set aside, is only at law for damages; there being nothing calling for an investigation that a jury cannot readily make.

BEAN, J., dissenting.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

This is a suit in equity.   The substance of the complaint is that the plaintiffs were two of the eight children of C. A. Marshall, who died intestate, November 20, 1905, leaving to his heirs among other property seventy-five acres of land in Clarke County, Washington; that the defendant, who is a sister of decedent, was the duly appointed guardian of the persons and estates of the minor heirs, including plaintiffs, and taking advantage of their youth and inexperience wrongfully and falsely represented to plaintiff George A. Marshall that his undivided one eighth of the land was worth not to exceed $170, when in truth it was worth $1,000, and by reason of such false representation obtained from him a deed thereto for the consideration of $170; that in like manner she secured from Lavina A. Marshall a deed for his undivided one eighth of the land for a consideration of $68.   The pleading contains further allegations to the effect that plaintiffs placed confidence in the statements of their aunt and guardian and relied thereon and suffered loss thereby; that immediately after securing the second deed she sold the property for a price in excess of $8,000—receiving in payment some cash, and some promissory notes secured by a mortgage on the land,

for a balance of $6,412.50, which notes and mortgage are still owned by and in the possession of defendant. It is further alleged that plaintiffs did not discover and could not by the exercise of reasonable diligence have discovered the fraud which had been perpetrated until a short time before the commencement of the suit. The prayer of the complaint is as follows:

"1. That the said defendant be required to account to the said plaintiffs for the difference between the true value of their interests in the land so conveyed, and the amounts paid to them by her at the time of their conveyance to her.

"2. That said defendant be held to be a trustee for the said plaintiffs, of their interests in the profits made by her in the sale of the said lands.

"3. That the said notes given in part payment of the purchase price in the sale of the said lands be impressed with a trust to the extent of the plaintiffs' interest therein, and that the said notes be sold to satisfy the amounts due to the said plaintiffs, and for such other and further relief as to the court may appear just and equitable, and for the costs and disbursements of this suit."

Defendant demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of suit, and the further ground "that it appears upon the face of the complaint that the court has no jurisdiction of the subject matter of the suit." The demurrer having been overruled the defendant answered with some admissions and denials, and affirmatively pleaded certain counterclaims to which a reply was filed and a trial had, which resulted in a decree in favor of plaintiffs in the following form:

"Now, therefore, by reason of the premises and of the aforesaid findings of fact and conclusions of law, it is considered, adjudged and decreed, that the plaintiff, George Amos Marshall, do have and recover of

and from the defendant, Nellie Gustin, the sum of Six Hundred Twenty and 85/100 ($620.85) Dollars, with interest thereon at the rate of six per cent per annum from October 11th, 1911; and it is further ordered that the plaintiff, Lavina A. Marshall, do also have and recover of and from the said defendant, Nellie Gustin, the full sum of Five Hundred Seventy ($570.00) Dollars, with interest thereon at the rate of 6% per annum from October 11th, 1911; and it is further ordered, that the plaintiffs have and recover of and from the defendants their costs and disbursements, taxed at $———.''

REVERSED.    SUIT DISMISSED.

For appellants there was a brief over the names of *Mr. Henry J. Westbrook* and *Messrs. Christopherson & Matthews,* with oral arguments by *Mr. Q. L. Matthews* and *Mr. Westbrook.*

For respondents there was a brief over the names of *Mr. Edward J. Brazell* and *Mr. Martin W. Hawkins,* with an oral argument by *Mr. Brazell.*

BENSON, J.—Defendant urges that the demurrer should have been sustained upon two grounds: (1) That it appears upon the face of the complaint that the statute of limitations has run against the claims of both plaintiffs; and (2) that the facts alleged do not disclose a case calling for the interposition of a court of equity.

1. As to the first of these, it is sufficient to say that no demurrer was interposed upon that ground, and it cannot now be considered: *Portland* v. *Coffey,* 67 Or. 507 (135 Pac. 358).

2. As to the second contention it may be remarked that from the complaint it appears, at least inferentially, that the defendant was holding the real estate described therein as guardian of plaintiffs at the time

of the transfer of the land to her. Such a trust rela-
tion existing between the parties creates a condition
calling for the exercise of equitable jurisdiction and al-
though the court might not be able to grant the specific
relief prayed for, it would be justified in following
the trust property or its proceeds for the relief of the
*cestui que* trust. We must therefore hold that the
complaint is not vulnerable to a demurrer upon this
ground.

3. A careful examination of the evidence discloses
the following facts: The father of plaintiffs died, leav-
ing an estate consisting of seventy-five acres of land in
Clarke County, Washington, and a life insurance
policy in Portland, upon which was collected the sum
of $1,904.85. The County Court of Multnomah County
appointed defendant guardian of the minor children,
including plaintiffs, and of the personal estate just
referred to. The estate in Washington was adminis-
tered, but there is no evidence that any guardian or
trustee was ever appointed to manage it. There is no
question as to the integrity and propriety of defend-
ant's care of the children and of the funds which came
into her hands as guardian. On September 18, 1909,
plaintiff George Amos Marshall conveyed his one-
eighth interest in the land to defendant, and in Sep-
tember, 1911, Lavina Marshall conveyed his one-eighth
interest to defendant, the expressed consideration in
the deeds being $170 and $68 respectively. Each of
the plaintiffs was twenty years old when he made his
conveyance. Thereafter, having acquired by purchase
the interests of the other heirs, defendant sold the
land in connection with an adjacent 160 acre tract of
which she was the owner, for the expressed considera-
tion of $8,812.50, receiving a partial payment in cash
and, for the balance, accepting two notes for the aggre-

gate sum of $6,412.50, secured by a mortgage upon the land. The testimony is very largely directed to the relative values of the 75 acre tract and the 160 acre tract which were sold as one at the rate of $37.50 per acre. It is not necessary to consider this evidence since under the pleadings and the facts already stated it sufficiently appears that the plaintiffs have not made a case calling for the interposition of a court of equity. It is true that the prayer asks that the defendant be declared a trustee of their interests in the profits arising from the sale of the land by defendant, but they can have no interest in such profits unless they were part owners of the land at the time of such sale, which, according to their allegations, they were not. It must be remembered that they are not seeking a rescission of their contracts, or a cancellation of their deeds, but simply to recover the difference between the price received by them and the true value of the property and for this relief they have a complete remedy at law. When a party has been induced by fraud and deceit to part with his property for an inadequate consideration he has his election of two remedies: He may affirm the transaction and have his action for damages, or he may repudiate the bargain and call upon a court of equity to aid him in placing the parties in the position they occupied before the deal was consummated, but he cannot have both remedies.

It is evident from the decree itself that the trial court found no ground for equitable interference, since a money judgment is all that was allowed and, in that event, the money judgment could not under any view of the matter be sustained. In the case of *Oregon-Wash. R. & N. Co.* v. *Reed,* decided December 27, 1917, not yet reported, this court through Mr. Justice MOORE says:

"This being so, the element of damages which the defendants may have sustained is necessarily eliminated, for the right to recover such compensation in a suit must depend upon some equity which enables the court to secure and retain jurisdiction of the subject matter, and as an incident thereof to award the damages inflicted."

In *Zinn* v. *Zinn,* 54 W. Va. 483 (46 S. E. 202), the same doctrine is thus expressed:

"All that plaintiff has any claim to whatever is the oil royalties and gas rentals reserved in the lease of Preston G. Zinn, and all he claims by his bill is these oil royalties. This is mere pecuniary demand for the royalties already received by plaintiff and is not maintainable under the alleged heads of equitable jurisdiction."

We do not wish to be understood as holding that in a proper case a court of equity will not exert its power where a trustee has violated the conditions of his trust or has acted in bad faith in the execution thereof. However, when the facts proven and the relief sought justify nothing further than pecuniary recompense for the wrong, there is nothing upon which equitable jurisdiction can base its action.

The decree must be reversed and one entered here dismissing the suit, without prejudice.

REVERSED.     SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.

BEAN, J., Dissenting.—I am unable to concur in the holding that this is not a proper case for the interposition of a court of equity.

As stated, it appears that the defendant, Nellie Gustin, was appointed as guardian of the persons and

estates of plaintiffs, George Amos Marshall and La-
vina A. Marshall, minor children of C. A. Marshall.
Part of their estate consisted of a one-eighth interest
each in 75 acres of land. While they were yet minors
the defendant purchased the interest of each in the
land for the consideration of $68 and $170 respectively.
In December, 1911, the defendant sold the 75-acre
tract together with 160 acres of adjoining land which
she owned and which was of but little value, for
$8,812.50. It is alleged that the one-eighth interest of
each of the plaintiffs was of the value of $1,000. This
suit was instituted for an accounting and to impress
a trust upon the proceeds of the land in favor of the
plaintiffs for the difference between the respective
amounts paid and the actual value of their interest in
the land. After deducting some expenditures made
by the guardian on behalf of her wards the trial court
adjudged a balance of $620.85 in favor of George Amos
Marshall, and a balance of $570 in favor of Lavina A.
Marshall.

Equity has inherent, original, general jurisdiction
independent of statutory legislation concerning the
same subject matters over the persons and estates of
infants: 3 Pom. Eq. Juris. (3 ed.), § 1303. In 1 Pom.
Eq. Juris. (3 ed.), § 78, we find the following:

"Under their general power in cases of trust and of
accounting, the American courts of equity may give
all proper relief to wards against their guardians."

Constructive fraud which is inferred from the con-
ditions and relations of the parties to the transaction
embraces those cases in which the transaction, al-
though it may be perfectly regular in its external
form, is impeachable in equity because it lacks that
absolute consent which is regarded as essential by

courts of equity: 2 Pom. Eq. Juris., § 943. In a note to this section we find a quotation by Mr. Justice HAND in *Cowee* v. *Cornell,* 75 N. Y. 91, 99 (31 Am. Rep. 428), as follows:

"It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed, but must be proved. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled."

Such constructive fraud includes: (1) Transactions void or voidable with persons totally or partially incapacitated; (2) transactions presumptively invalid between persons in fiduciary relations. The incapacities embraced under the first head may be created by the policy of the law, such as infancy, and may be either total or partial. They may be inherent in the very position and circumstances of the parties: 2 Pom. Eq. Juris. (3 ed.), § 944. The incapacity of the plaintiffs while they were minors to enter into a binding contract and execute a conveyance of their land to the defendant is the same in equity as in law. Such contracts are generally voidable only and therefore may be ratified after the infants attain their majority: Id., § 945.

In the present case the land having been conveyed by the infants' guardian to one who is presumably an innocent purchaser for value, and the former wards of defendant having ratified the deed so far as the title is concerned by this suit seek to compel the guardian to account for, and to have a trust impressed upon, the proceeds of the land, namely, certain promissory notes in the hands of the defendant, in lieu of the land to which they would have an undoubted equitable right if the second conveyance had not been executed.

The defendant should in equity be declared to hold a fair proportion of the proceeds of the land in trust for plaintiffs and the trust should be enforced. Their remedy at law would not be adequate. Mr. Pomeroy says:

"Equity * * under certain circumstances grants remedies which are legal in their nature, and are capable of being conferred by a judgment at law, namely, a mere recovery of money, or of the possession of specific land or chattels": 1 Pom. Eq. Juris. (3 ed.), § 108.

A purchase made by a guardian from his ward, or by a trustee of the *cestui que trust,* or by an attorney of his client, may be in good faith, and as beneficial to all parties as any other transactions in life; and yet the inconvenience and danger of allowing contracts to be entered into between parties holding such relations to each other are so great that courts of equity construe such contracts *prima facie* to be fraudulent, and they construe a trust to arise from them: 1 Perry on Trusts (6 ed.), § 168. In Section 197, Id., we find the following language:

"It is thus seen that the rule against purchasing by trustees, of the *cestui que trust,* amounts almost to prohibition; for if a trustee purchases the property, and sells it at a profit, he must account for it as a trustee;

not because there was any fraud in the transaction, but because it is against the policy of the law to allow such transactions (without the consent of the *cestui* given freely after he has been fully informed). Nor is it material that there should be an advantage, or profit, arising out of a purchase by the trustee from the *cestui que trust*. It is not necessary to prove such advantage or profit: it is enough to show the relation and the purchase.''

The defendant as guardian of the persons and estates of the plaintiffs occupied a fiduciary relation of trust and confidence imposed upon her under the law, and it is contrary to the policy of the law to permit her to speculate and profit by the purchase and sale of the land of her wards and a constructive trust in the proceeds of the sale of the land should be declared: *Parrish* v. *Parrish,* 33 Or. 486 (54 Pac. 352); *Kroll* v. *Coach,* 45 Or. 459, 473 (78 Pac. 397, 80 Pac. 900). In the case of *Borchert* v. *Borchert,* 132 Wis. 593 (113 N. W. 35), brought to establish a constructive trust, and for an accounting under circumstances where an aged mother was induced to convey certain property owned by her to some of her children, upon consideration of their supporting her, the court speaking through Mr. Justice MARSHALL, states the following:

''The point is made that the pleader intended to state a cause of action and to establish a constructive trust and for an accounting, and that the facts alleged are not sufficient in that it appears that the subject of the trust no longer exists, therefore a personal action only will lie. There are three answers to that proposition. One: The primary purpose of the action is to rescind the alleged fraudulent contract. The other matters are germane thereto and so may properly be litigated as incidental to a vindication of the primary right. Two: An action lies to establish a constructive trust and to recover the subject thereof where the property wrongfully obtained in specie, or in its

converted form, still remains in the possession of the wrongdoer. Three: In case of a constructive trust, an action lies in equity for its establishment and for an accounting even though the property wrongfully obtained is personal, or in specie or in some new form into which it can be definitely traced, and is within the reach of a plain remedy at law where it is necessary, in order to establish complete justice, for equity jurisdiction to deal with the situation: 3 Pom. Eq. Jur. 1053.''

The court further says:

''This court quite recently held that the better rule is that the *cestui que trust* may always sue in equity for an accounting: *Harrigan* v. *Gilchrist,* 121 Wis. 127, 252 (99 N. W. 909).''

In the case at bar equity would not be divested of jurisdiction by reason of the form of the decree of the lower court being simply a money judgment. Neither is this court bound by the form of such a decree. It should be couched in appropriate language and defendant required to account for the profits realized upon the sale of the land of her wards, and a constructive trust impressed upon the proceeds of the land. The decree of the lower court in substance should be affirmed.

---

Former opinion adhered to June 4, 1918.

## ON REHEARING.

(173 Pac. 461.)

*Mr. Guy C. H. Corliss, Mr. Martin W. Hawkins* and *Mr. Edward J. Brazell,* for the respondents (applicants for rehearing), with an oral argument by *Mr. Corliss.*

*Mr. Henry S. Westbrook* and *Messrs. Christopherson & Matthews, contra,* with an oral argument by *Mr. Henry S. Westbrook.*

In Banc.

McBRIDE, C. J.—4. The able petition for rehearing herein created some doubt in the mind of the court as to the soundness of the original opinion concerning the jurisdiction of equity in the premises. Upon a careful review of the authorities and a consideration of the testimony we are satisfied that the result arrived at by Justice BENSON is correct.

The crucial point in the case is stated by Justice BENSON as follows:

"It must be remembered that they are not seeking a rescission of their contracts, or a cancellation of their deeds, but simply to recover the difference between the price received by them and the true value of the property, and for this relief they have a complete remedy at law. When a party has been induced by fraud and deceit to part with his property for an inadequate consideration, he has his election of two remedies; he may affirm the transaction and have his action for damages, or he may repudiate the bargain and call upon a court of equity to aid him in placing the parties in the position they occupied before the deal was consummated, but he cannot have both remedies."

The application of this doctrine here is this: The plaintiffs waive minority as a substantive cause of suit. They do not ask to have the sale set aside or the contract rescinded. Having arrived at majority they had, upon discovery of the alleged fraud, a right to have the deeds set aside and their lands returned to them. But they chose to affirm the sale and thereby stand in the same position as though they had been of

89 Or.—5

full age. This being true their remaining remedy was by an action at law to damages for the alleged deceit. There is nothing in the case that calls for an intricate accounting or for any investigation that a jury cannot make readily. The price paid plaintiffs for their shares is easily ascertained; the price paid to defendant is admitted and the measure of damages is the difference between the net price paid to plaintiffs and the price received by defendant from her grantee. There is no pretense that the mortgage is worth less than its face. On the contrary the tendency of plaintiffs' evidence is to show that it is ample security for the balance due. There is no pleading or proof that defendant is or is likely to become insolvent, so that with the sale affirmed and the right of rescission waived by the plaintiffs, there is left to them a plain, speedy and adequate remedy at law for damages for the alleged deceit, in which defendant can have the benefit of a jury trial.

We adhere to our former opinion.

FORMER OPINION APPROVED.   DECREE REVERSED.

BEAN, J., dissents.